# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATISH NARAYAN,<br><br>Plaintiff,<br><br>v.<br><br>COMPASS GROUP USA, INC., a Delaware Corporation; KEN LEGAULT, an individual; and Does 1 through 25, inclusive,<br><br>Defendants. | No. 2:17-cv-00999-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Atish Narayan seeks redress from his former employer, Compass Group USA, Inc., ("Compass"), for alleged disability discrimination, failure to accommodate, failure to engage in an interactive process, retaliation under both the Fair Employment and Housing Act ("FEHA") and the California Family Rights Act ("CFRA"), failure to prevent discrimination, wrongful termination in violation of public policy, and declaratory relief. He also asserts a claim for defamation against his manager at Compass, Defendant Ken Legault ("Legault"), and alleges he was in fact fired because of a disability he sustained while working for Compass.

Although Plaintiff initially filed his complaint in Sacramento County Superior Court, Defendants removed the case to this Court on diversity grounds pursuant to 28 U.S.C.

§§ 1332(a) and 1441(a). Defendants claim that Legault's inclusion as a defendant, which would otherwise destroy the requisite diversity, has no legal basis and should be disregarded for jurisdictional purposes

There are currently two matters before the Court. First, Plaintiff moves for remand, arguing that Legault was properly named as a defendant and his presence in this case made removal to this Court improper. Alternatively, Plaintiff further contends that the amount in controversy requirement has not been met. Second, Legault moves to dismiss Plaintiff's Ninth Cause of Action, for defamation, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Legault asserts that since Plaintiff has failed to state a viable claim for defamation, and because defamation is the only cause of action asserted against Legault, he should be dismissed entirely as a defendant to this lawsuit.

For the reasons set forth below, Plaintiff's Motion to Remand (ECF No. 10) is DENIED and Legault's Motion to Dismiss (ECF No. 8) is GRANTED.[1]

## BACKGROUND

Plaintiff had worked for Compass for over 32 years when he was terminated on February 23, 2017. Pl.'s Compl. at ¶ 18. Previously, in October 2015, Plaintiff had injured his knee at work. Id. at ¶ 20. Plaintiff received medical treatment for the knee-injury from October of 2015 until he had surgery to repair his knee on April 26, 2016. Id. at ¶ 21-22. After the surgery, Plaintiff applied for and obtained a medical leave of absence under the Family Medical Leave Act as well as its state law counterpart, the CFRA, through August 1, 2016. Id. at ¶ 22. On August 1, 2016, Plaintiff returned to work and allegedly resumed his full duties. Id. at ¶ 23.

The parties dispute whether Plaintiff did in fact perform his full duties from August 1, 2016 until February 23, 3017. Compass claims that sometime between

---

[1] Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

2

Plaintiff's return to work and his termination in February, he received work restrictions through his worker's compensation claim. Def.'s Mot. to Dism., ECF No. 8, 2:9–11. These restrictions, according to Compass, precluded Plaintiff from performing the essential functions of his job. Def.'s Mot. to Dism., ECF No. 8, 2:9–11. Plaintiff neither confirms nor denies whether there were work restrictions, but instead maintains that he completed his duties, including all essential functions, at full capacity. Pl.'s Mem. Supp. Mot. to Remand, ECF No. 10, 2:16–18.

On February 23, 2017, Plaintiff met with Legault, his manager at Compass. Pl.'s Comp. at ¶ 25. Another Compass manager, Julie Berger, was also present. Id. At this meeting, Legault told Plaintiff that Compass was terminating his employment because he could not perform the essential functions of his position. Id. Plaintiff responded that he had been performing the essential functions of the position since August 1, 2016 and requested that Legault investigate accordingly. Id. Legault replied by representing that the decision to terminate was final and effective immediately. Id. at ¶ 26.

Plaintiff then sued both Compass and Legault on the basis of the foregoing allegations. He filed his complaint on or about April 7, 2017, and on May 12, 2017, Compass removed the case to this Court. Plaintiff is a citizen of California, Pl.'s Comp. at ¶ 1, and Compass is a Delaware corporation with its principal place of business in North Carolina. Def.'s Notice Rem., ECF No. 1, 4:18–20. Although Plaintiff included Legault, a California resident, in his complaint, Defendants alleged that Legault was a "sham" defendant named solely for the purpose of destroying diversity and that removal was therefore appropriate.

According to Compass, Legault's inclusion was a "sham" because: (1) Plaintiff cannot meet the prima facie elements of a defamation claim against Legault; (2) even if the prima facie elements are met, Legault's statements were privileged; (3) the statement is opinion; and (4) Plaintiff has not amended the complaint to further substantiate the defamation claim despite having the opportunity to do so. Specifically, Compass contends there is no person other than Plaintiff to whom the allegedly

defamatory statement was made and that as such, defamation, by definition, cannot be proven. Moreover, Compass argues, even if there is a third person to whom Legault directed the allegedly defamatory statement, the statement is privileged because it was a statement about the reason for Plaintiff's termination made to another employee. Compass also notes that defamation requires a "false statement of fact," and maintains that Legault's allegedly defamatory statement was merely a nonactionable statement of opinion. Finally, Compass points to the fact that Plaintiff could have amended his complaint but has not. Such failure, Compass argues, demonstrates that there are no changes Plaintiff could make to further substantiate his defamation claim.

      Plaintiff, on the other hand, moves to remand his case back to Sacramento County Superior Court on grounds that joining Legault was proper and, that regardless, that Defendant has failed to show that the requisite amount in controversy has been pled. Defendant concurrently moves to dismiss the Ninth Cause of Action for defamation on the same grounds outlined above. Further, Defendant requests that he be dismissed from this case in its entirety as a fraudulently joined defendant under Rule 21.

## STANDARDS

### A.    Remand

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, the defendant may remove it to federal court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." Id. § 1331. A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is

///

between citizens of different states, or citizens of a State and citizens or subjects of a foreign state . . . ."  Id. § 1332(a)(1)-(2).

A defendant may remove any civil action from state court to federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)). Courts "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted). "[I]f there is any doubt as to the right of removal in the first instance," the motion for remand must be granted. Id. Therefore, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

If the district court determines that removal was improper, then the court may also award the plaintiff costs and attorney's fees accrued in response to the defendant's removal. 28 U.S.C. § 1447(c). The court has broad discretion to award costs and fees whenever it finds that removal was improper as a matter of law. Balcorta v. Twentieth-Century Fox Film Corp., 208 F.3d 1102, 1106 n.6 (9th Cir. 2000).

**B.  Motion to Dismiss**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,337–38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . .

6

carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**ANALYSIS**

"[F]raudulently joined defendants will not defeat removal on diversity grounds." Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998). In assessing whether the joinder of a party is fraudulent and a "sham" intended only to defeat diversity, courts look to whether the plaintiff has failed to "state a cause of action against a resident defendant, and whether that failure is obvious according to the settled rules of the state." Hunter v. Phillip Morris USA, 582 F.3d 1039, 1043 (9th Cir. 2009) (citing Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007). Where plaintiff has obviously failed to state any claim under such settled law, remand for lack of diversity would be improper. Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067–68 (9th Cir. 2001).

Defendants are entitled to present facts showing fraudulent joinder. Ritchey, 139 F.3d at 1318. There is a general presumption against fraudulent joinder, however, and it is the defendant's burden to prove it by clear and convincing evidence. Hamilton Materials, Inc., 494 F.3d at 1206. Simply alleging that a plaintiff has not pled sufficient facts to state a claim does not necessarily suffice if plaintiff could potentially amend the complaint to allege a viable claim. Birkhead v. Parker, 2012 WL 4902695 at *2–3 (N.D. Cal. Oct. 15, 2012). Nonetheless, if it is clear under state law that under no circumstance identified by a plaintiff could a viable claim be made against the defendant

7

alleged to have been fraudulently joined, dismissal can still be appropriate. See Good v. Prudential, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998) ("[T]he defendant must demonstrate that there is no possibility the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant."). In other words, if there "exists 'a non-fanciful possibility' that Plaintiff can state a claim under California law against the non-diverse defendant, the Court must remand." Hernandez v. Ingite Rest. Group, Inc., 917 F. Supp. 2d 1086, 1091–92 (E.D. Cal. 2013) (quoting Nasrawi v. Buck Consultants, LLC, 776 F. Supp. 2d 1166, 1169–70 (E.D. Cal. 2011)). In sum, "'a non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned.'" Id.

Although a defendant must show that there is virtually no chance that the plaintiff can state a viable claim in order to invoke fraudulent removal, that assessment must still be based largely on the allegations of the plaintiff's complaint. Removability is therefore generally determined by the "four corners of the applicable pleadings, not through the subjective knowledge or a duty to make further inquiry." Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 694 (9th Cir. 2005). Diversity jurisdiction should consequently be analyzed at the time the complaint is filed and removal is effectuated. Strotek Corp. v. Air Transp., Ass'n of Am., 300 F.3d 1129, 1131 (9th Cir. 2002); Toth v. Guardian Indus. Corp., 2012 WL 468244 at *5 (E.D. Cal. Feb. 13, 2013) ("the weight of authority holds that review of the complaint, even in fraudulent joinder cases, is constrained to the facts actually alleged therein"). Since Plaintiff's only claim against Legault is the Ninth Cause of Action for Defamation, Legault now bears the burden of showing, with all state law ambiguities resolved against him, that there is no possibility that Plaintiff can state a such a claim or that the possibility he could is fanciful. Accordingly, both Plaintiff's Motion to Remand and Legault's Motion to Dismiss turn on whether Plaintiff has stated a viable defamation claim. If Plaintiff has not, and the elements of diversity jurisdiction are
///

otherwise satisfied, then granting the Motion to Dismiss, denying the Motion to Remand, and ultimately maintaining jurisdiction over this case is proper.

### A. Prima Facie Elements of Defamation

To state a prima facie case for defamation, Plaintiff must allege facts that show Defendant made "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." Taus v. Loftus, 40 Cal. 4th 683, 720 (2007). Publication is communication of the allegedly defamatory statement "to a third person who understands its defamatory meaning as applied to the plaintiff." Shively v. Bozanich, 31 Cal. 4th 1230, 1242 (2003). Communicating the allegedly defamatory statement to the plaintiff alone, without more, does not constitute "publication" for the purposes of evaluating a defamation claim. Cabesuela v. Browning-Ferris Indus. of Cal., Inc., 68 Cal. App. 4th 101, 112 (Cal. Ct. App. 2000). But the statement need not be published to the "public at large; communication to a single individual is sufficient." Smith v. Maldonado, 72 Cal. App. 4th 637, 645 (Cal. Ct. App. 1999). Nor must the statement be intentionally communicated to the third person. Haley v. Casa Del Rey Homeowners Ass'n, 153 Cal. App. 4th 863, 877–78 (Cal. Ct. App. 2007). On the contrary, a defamatory statement negligently communicated to a third party will suffice. Id. A statement is negligently communicated if a reasonable person would recognize that an act creates an unreasonable risk that the defamatory matter will be communicated to a third person. Id. at 877–79. That is, it is possible for an individual who overhears an allegedly defamatory statement to constitute the necessary third party if a reasonable person in the speaker's shoes would have recognized that the third party would hear the statement.).

Here, Plaintiff contends that the presence of Compass manager Julie Berger at the termination meeting was sufficient to constitute the requisite communication to a third party. Legault, on the other hand, argues that Plaintiff failed to allege that his statements were (1) made to a "third person who *understands* the defamatory meaning of the statement and its application to [plaintiff]" and (2) "directed *at anyone else*." Def.'s Opp.

9

to Mot. Remand, ECF No. 12, 3:20–28 (emphasis in the original). Certainly, Berger understood what was being said to Plaintiff. Additionally, the fact that Legault did not direct the allegedly defamatory statement specifically to Berger does not necessarily doom Plaintiff's claim. With Berger in the room, Legault knew, presumably, that Berger would hear his statements. Indeed, in the context of an employee termination, it is reasonable to infer that hearing and seeing what transpired at the meeting was the very purpose for having Berger present. Legault's statements made in this context were, therefore, at the very least negligently, if not in fact intentionally, communicated to Berger.

It is nevertheless questionable whether Berger, regardless of whether she otherwise qualifies as a third person for defamation publication purposes, should, in this context, be deemed the necessary third person. Berger was on the same side of the conversation as Legault. What was going to be said and done in the meeting could not have been news to her when it happened. Indeed, for all intents and purposes, Plaintiff basically met with a single entity: Compass Group USA, Inc. Thus, it is doubtful whether Berger can be deemed a "third person" to whom Defendant communicated the allegedly defamatory statement.[2] At this stage, however, since the Court must resolve any state law ambiguity in that regard in Plaintiff's favor, it will assume that Berger can qualify as the necessary third person and that, for instant purposes, the prima facie elements of a defamation claim have been pled. Despite that prima facie showing, however, the Court must still address Legault's argument that the allegedly defamatory statements to Berger were privileged.

---

[2] As a fundamental matter, it is worth noting that courts have expressed "strong judicial disfavor for libel suits based on communications in employment performance reviews." Jensen v. Hewlett-Packard Co., 14 Cal. App. 4th 958, 964 (Cal. Ct. App. 1993). Although a performance evaluation can support a cause of action for libel, such a claim only lies where the performance evaluation "falsely accuses an employee of criminal conduct, lack of integrity, dishonesty, incompetence or reprehensible characteristics or behavior." Id. at 965. Here, although the facts do not involve a performance review per se, they are nonetheless analogous to the performance review or evaluation context in that part of Defendant's termination of Plaintiff involved evaluation of Plaintiff's performance. The sentiment expressed in Jensen is therefore instructive.

10

**B.      Common Interest Conditional Privilege**

California Civil Code section 47(c) codifies the common law privilege of common interest. At common law, the privilege, "which protected communications made in good faith on a subject in which the speaker and hearer shared an interest or duty." Kashian v. Harriman, 98 Cal. App. 4th 892, 914 (Cal. Ct. App. 2002) (quoting, in part, Brown v. Kelly Broad. Co., 48 Cal. 3d 711, 727 (1989)). Under Civil Code section 47(c), a publication is privileged if it is "a communication, without malice, to a person interested therein, (1) by one who is also interested…" Generally, the defendant bears the initial burden of establishing that the allegedly defamatory statement is privileged. Taus v. Loftus, 40 Cal. 4th 683, 721 (2007). Once the defendant has met this standard, the burden shifts to the plaintiff to establish that the statement was made with malice. Id. For the purposes of Civil Code section 47(c), malice means "a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person.'" Brown v. Kelly Broad. Co., 48 Cal. 3d 711, 723 (1989). If plaintiff proves malice exists, the privilege does not exist. Kashian, 98 Cal. App. 4th at 915.

Here, therefore, Legault must prove that he and Berger have a common interest. Plaintiff does not appear to contest that Berger is an interested person. Indeed, as Legault points out, communications between an employer and employees concerning the reasons for terminating another employee may be privileged. Deaile v. Gen. Tel. Co. of Cal., 40 Cal. App. 3d 841, 846–47 (Cal. Ct. App. 1974) (concluding that communicating to employees the reasons for another employee's forced retirement were "of a kind reasonably calculated to protect or further a common interest of both the communicator and the recipient" because the information was disseminated only to preserve employee morale and job efficiency, and was not malicious). A common business or professional interest will suffice. Kashian, 98 Cal. App. 4th at 930. Accordingly, Legault and Berger were interested parties for the purposes of determining whether the conditional privilege defense applies because both were managers for Compass.

11

Plaintiff cites Russell v. Geis, 251 Cal. App. 2d 560 (1967) for the proposition that to successfully invoke the conditional privilege defense Legault must have believed his allegedly defamatory statements to be true. Although the case law does not generally include this requirement in its recitations of the prima facie elements of defamation, it is nonetheless true that a defendant's admission that he did not believe his own statement can defeat the common interest privilege. The defendant in Russell, when asked if he believed the allegedly defamatory statement, expressly admitted he did not. Here, on the other hand, we have no such admission, making Russell inapposite. Plaintiff simply argues that is it "implausible for a reasonable person to believe Plaintiff could not perform the essential functions of his position when he had been performing them without accommodations for almost [six] months." Pl.'s Mem. Supp. Mot. Remand, ECF No. 10, 7:21. That conclusory allegation, especially when coupled with the fact that Plaintiff ignores Defendant's argument that Plaintiff was actually working subject to workers compensation restrictions that impeded his ability to perform, is insufficient. Because there is no evidence that Defendant did not believe his statement, the common interest conditional privilege applies unless plaintiff can prove malice.

### 1. Malice

With Defendant having met his initial burden of proving that the common interest conditional privilege applies, the burden shifts to Plaintiff to prove actual malice that defeats the privilege. As indicated above, malice refers to "a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy, or injure another person.'" Brown, 48 Cal. 3d at 723; Agarwal v. Johnson, 25 Cal. 3d 932, 944 (1979). In other words, actual malice "is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." Noel v. River Hills Wilsons, Inc., 113 Cal. App. 4th 1363, 1370 (Cal. Ct. App. 2003). Malice cannot be inferred from the communication of the allegedly defamatory statement itself. Cal. Civ. Code § 48. And, contrary to Plaintiff's apparent

1  belief that specificity is not required, Plaintiff must specifically allege actual malice.
2  Robomatic, Inc., v. Vetco Offshore, 225 Cal. App. 3d 270, 276 (Cal. Ct. App. 1990).
3  Indeed, "a general allegation of malice will not suffice; [the] plaintiff must allege detailed
4  facts showing [the] defendant's ill will towards him." Id.; Martin v. Kearney,
5  51 Cal. App. 3d 309, 312 (Cal. Ct. App. 1975). If Plaintiff proves malice exists, the
6  privilege does not. Kashian, 98 Cal. App. 4th at 915.

   The thrust of Plaintiff's argument is that his allegations are sufficiently analogous to allegations of malice in other cases that were deemed acceptable. Plaintiff cites to Slaughter v. Friedman, 32 Cal. 3d 149 (1982) and Mullins v. Brando, 13 Cal. App. 3d 419–21 (1970), to demonstrate the sufficiency of his allegations. Specifically, Plaintiff directs the Court to the following language in Slaughter:

> plaintiff has alleged that defendants knew that their statements were false, and that they acted in reckless disregard of the truth, being motivated by feelings of ill will toward plaintiff . . . defendants have had previous "quarrels with, rivalries involving, and ill feeling toward Plaintiff . . . The Publications were made as part of a plan to discredit and impugn the reputation and integrity of Plaintiff."

Slaughter, 32 Cal. 3d at 156–57. Plaintiff's allegations here, however, are not analogous to the allegations in that case. Plaintiff does not allege that Defendant acted in reckless disregard of the truth. Nor does he allege that Defendant was motivated by feelings of ill will toward Plaintiff arising from previous quarrels and rivalries. That is not to say that evidence of previous quarrels and rivalries are necessary to plead malice, but the absence of such pleading further demonstrates how inapposite Slaughter is. Finally, Plaintiff does not allege that the reasons Legault gave for Plaintiff's termination were part of a plan to discredit and impugn Plaintiff's reputation and integrity.[3] Without more, Plaintiff's sole allegation that that Legault "failed to reasonably investigate the truth of his statement and knew Plaintiff had been performing the essential functions for over 6 months," Pl.'s Mem. Supp. Mot. Remand, ECF No. 10, 8:18, does not set forth the requisite ill will required to show actual malice.

---
[3] Plaintiff's attempt to analogize to Mullins is similarly unpersuasive.

Perhaps recognizing the shortcomings of his complaint, Plaintiff also attempts to articulate alternative means of establishing malice. First, Plaintiff cites Harte-Hanks Commc'n, Inc. v. Connaughton, 491 U.S. 657, 682–684 (1989), for the proposition that malice is shown where the publisher of the alleged defamatory statements fails to interview witnesses who could have disproved the allegations or to consult relevant documentary evidence. But Harte-Hanks involved a public figure who accused a newspaper of defamation, a context that triggers different rules and a higher standard for establishing malice. And more importantly, Plaintiff misstates the rule derived from that case. The court specifically concluded that "failure to investigate will not alone support a finding of actual malice [but that] the purposeful avoidance of the truth" may. Harte-Hanks, 491 U.S. at 692. Plaintiff does not allege, nor is there any evidence of, purposeful avoidance here.

Second, Plaintiff argues that "malice can be shown through evidence that the publisher lacked reasonable grounds for belief in the truth of the publication." For this proposition, Plaintiff cites MacLeod v. Tribune Publ'g Co., 52 Cal .2d. 536, 552 (1959), a case that again involves a public figure's libel action against a newspaper. The defendant there published a news article that falsely implied or insinuated a connection between the plaintiff and the communist party. Id. at 544–45. Plaintiff alleged that defendant published the article "falsely and maliciously and with intent to injure, disgrace, and defame plaintiff," and that "all said charges, reference, assertions, and imputations were false, malicious, and unprivileged, and were calculated to and did expose plaintiff to hatred, contempt, ridicule, and obloquy." Id. at 552. The court held that because material refuting the implied connection was readily available, the defendant should not have had any trouble reporting the recommendations accurately, and that doing so indicated a lack of reasonable grounds for the report. Id. Simply put, MacLeod is distinguishable. Here, Plaintiff has not, and presumably cannot, point to evidence that proves Legault lacked reasonable grounds for the decision to terminate

///

14

plaintiff for not being able to perform the essential functions of his job other than simply arguing that he could do so.

Third, Plaintiff argues that malice can be established by a "failure to investigate thoroughly and verify the facts of the defamatory statement." But as is discussed above, a close reading of Harte-Hanks does away with this argument.

Finally, Plaintiff argues that it is for the state court to decide whether the conditional privilege applies. Plaintiff argues the discussion of conditional privilege and malice is "exogenous to the defamation claim" and cites to Ritchey, 139 F.3d at 1319 for the proposition that "when the defense is exogenous to the cause of action itself, it will not turn to [sic] a state action into a federal one." Pl.'s Mem. Supp. Mot. Remand, ECF No. 10, 9:20. But the court in Ritchey stated that rule in the context of determining whether federal question jurisdiction existed. Here, the issue is whether diversity jurisdiction exists. The discussions of fraudulent joinder, defamation, conditional privilege, and malice all fall within the ambit of the analysis of that inquiry. Determining each of these issues is therefore crucial to and not exogenous to determining whether there is diversity jurisdiction. Accordingly, it is entirely proper for this court to answer these questions.

In sum, although it is questionable whether Plaintiff has even met the prima facie elements of defamation, even if he has, the common-interest conditional privilege applies. As such, the Court holds that there is no possibility that Plaintiff can state a viable or non-fanciful defamation claim under the circumstances present here. Consequently, complete diversity exists.[4]

**C.**    **Amount in Controversy**

Plaintiff next contends that remand is still required because Compass failed to meet its burden of establishing that the amount in controversy exceeds $75,000. Under

---

[4] Having concluded that the defamation claim fails because the common interest conditional privilege applies, the Court need not address Legault's alternative arguments as to whether his statements were mere opinion or amounted to a legal conclusion, and accordingly could not be defamatory under those grounds, either.

28 U.S.C. § 1332, the district courts have original jurisdiction over all civil actions involving diverse parties where the amount in controversy exceeds $75,000, excluding costs and interest. The party seeking removal bears the burden of establishing federal jurisdiction. Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)).

The parties cite numerous cases standing for competing propositions regarding what Defendant must plead to establish that the amount in controversy is satisfied. Before turning to these cases, however, it is helpful to first look to the statute itself for guidance. Under 28 U.S.C.A § 1446(c)(2), where a party removes a case under § 1332(a), the amount in controversy is the amount demanded in good faith in the initial pleading unless the initial pleading seeks either nonmonetary relief or a money judgment "where the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." Id. § (c)(2)(A). In such a case, the notice of removal may assert the amount in controversy. Id. If the court finds, by a preponderance of the evidence, that the amount asserted in the notice for removal under § 1446(c)(2)(A) exceeds $75,000, then removal on that basis is proper. Id. § (c)(2)(B).

Accordingly, Defendant must prove that the amount in controversy is "more likely than not" to exceed the jurisdictional minimum. Coleman v. Estes Express Lines, Inc., 730 F. Supp. 2d 1141, 1148 ((C.D. Cal. 2010). Wholly "conclusory allegations as to the amount in controversy are insufficient," Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003), and "the court 'cannot base [its] jurisdiction on a [d]efendant's speculation and conjecture.'" Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (quoting Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 1002 (9th Cir. 2007); Coleman, 730 F. Supp. 2d at 1148. Nonetheless, "[t]he burden is not 'daunting,' and 'a removing defendant is *not* obligated to "research, state, and prove the plaintiff's claims for damages."'" Id. (emphasis in original) (quoting Korn, 536 F. Supp. 2d at 1205).

With this framework in mind, we turn to the instant case. Here, Plaintiff seeks nonmonetary relief in the form of injunctive and declaratory relief. Pl.'s Comp. at 20. Therefore, Defendant was authorized to assert the amount in controversy under § 1446(c)(2)(A). The question is whether he has pled such amount sufficiently.

Defendant points to language in Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547 (2014) for the proposition that he need only present "a plausible allegation that the amount in controversy is exceeded." What Defendant fails to point out, however, is that in Dart Cherokee, the question the Court addressed was whether it sufficed "to allege the requisite amount plausibly, or must the defendant incorporate evidence supporting the allegation into the notice of removal." Dart Cherokee, 135 S. Ct. at 551. All the Court held was that a plausible allegation was sufficient and that the defendant need not, at least initially, include supporting evidence in the notice of removal.

Here, however, the question is less whether Defendant made a plausible allegation—he has—than it is what happens now that Plaintiff has contested the amount. Dart Cherokee, as both parties point out, explains that § 1445(c)(2)(B) authorizes the submission of evidence by both parties once "plaintiff contests, or the court questions, the defendant's allegations." Plaintiff contends that Defendant is therefore "required to provide 'summary judgment type evidence' to establish that the amount in controversy is met." Pl.'s Mem. Supp. Mot. Remand, ECF No. 16, 3:19. Not so. First, as Defendant points out, Plaintiff fails to assert that he is seeking less than $75,000. Second, the evidence currently before the Court is sufficient to ascertain whether the amount in controversy is satisfied.

Plaintiff first seeks damages for loss of income, benefits, regular employment, and career advancement opportunities. Pl.'s Comp. at ¶¶ 35, 43, 55, 67, 75, 94, 103, 124. Plaintiff earned $36,063.65 in 2016. Exhibit 2, attached to Decl. of Julie Cobb. Plaintiff was terminated on February 23, 2017. Defendant assumed a trial date of at least one year from the date of the hearing on Plaintiff's Motion for Remand, which was on July 27,

17

2017, and calculated Plaintiff's lost income to be approximately $51,090.17.  But as Plaintiff points out, ". . . 'diversity must exist at the time the action is removed to federal court.'" Campbell v. Hartford Life Ins. Co., 825 F. Supp. 2d 1005, 1007–08 (E.D. Cal. 2011) (quoting Miller v. Grgurich, 763 F.2d 372, 373 (9th Cir. 1985)).  The date of removal is May 12, 2017.  Plaintiff was terminated on February 27, 2017, so the amount of lost income relevant to determining whether diversity existed on May 12, 2017 is around three month's wages, which is approximately $9,009.15.

Plaintiff also seeks unspecified damages for emotional distress.  Pl.'s Comp. at ¶¶ 36, 44, 56, 68, 76, 95, 104, 125.  Defendant suggests that approximately $25,000 is a reasonable estimate of the emotional distress damages Plaintiff might obtain if ultimately successful.  Def.'s Mem. Opp. to Mot. Remand, ECF No. 12, 13:12–17.  Defendant cites Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2015) and two jury verdicts as evidence for this proposition.  Plaintiff essentially contends Kroske is inapposite and attacks the jury verdicts on the grounds that they are not analogous cases.  Plaintiff does not, however, specifically contest the amount of $25,000 nor argue it is seeking a specific amount less than $25,000.  Ultimately, the Court need not settle on a figure now because, when joined with the other damages Plaintiff seeks, even a minimal award of emotional distress damages would suffice.

Plaintiff also seeks attorney's fees for each of his nine causes of action. Pl.'s Comp. at ¶¶ 39, 47, 59, 71, 79, 98, 106, 118; id. at 20 (Prayer for Relief).  Attorney's fees may be considered in determining the amount in controversy. Campbell, 825 F. Supp. 2d at 1009. Defendant admits that he cannot calculate Plaintiff's attorney's fees with precision but suggests they alone might exceed $75,000.  In support of this contention, Defendant cites to Ponce v. Med. Eyeglass Ctr., Inc., No. 2:15-CV-04035-CAS (JEMx), 2015 WL 4554336, at *3 (C.D. Cal. Jul. 27, 2015), which observes that attorney's fees in Los Angeles generally run between $425.00 and $725.00 per hour. Plaintiff does not dispute this estimate nor does he offer his attorney's rates or what fees they have incurred up to this point.  Instead, Plaintiff attacks the basis for Defendant's

18

assumptions and urges this Court to decline to consider future attorney's fees at all. But as long as the assumptions in Defendant's chain of reasoning are reasonable, they are expressly authorized. Ibarra v. Namheim Inv., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015); Thompson v. Big Lots Stores, Inc., 2017 WL 590216 (E.D. Cal. Feb. 13, 2017). In light of Plaintiff's failure to specifically contest the hourly rates or total estimated fees suggested by Defendant with either his own attorney's fees and to-date incurred cost estimates or some other means, the Court cannot conclude that Defendant's assumptions are off base. Along with the other amounts discussed herein even a minimal award of attorney's fees would cause the amount in controversy to exceed the jurisdictional minimum.

Finally, Plaintiff seeks punitive damages. Pl.'s Comp. at ¶¶ 38, 46, 58, 70, 78, 97, 105, 127. Courts may consider punitive damages in determining the amount in controversy as long as they are recoverable under state law. Campbell, 825 F. Supp. 2d at 1008. In California, punitive damages are available for violations of FEHA. Andrade v. Arby's Rest. Group, Inc., 225 F. Supp. 3d 1115, 1143 (N.D. Cal. 2016). Defendant cites to two cases with large punitive damages awards to establish an estimate and Plaintiff argues those cases are not analogous. The Court, however, need not address whether those cases are analogous because even a minimal damage award along with the damages discussed above would satisfy the amount in controversy threshold. Indeed, if the Plaintiff prevails on all its claims, which, of course, we must presume, the jury will have concluded that Compass discriminated against a 32-year employee because of an injury he sustained on the job. It is not at all difficult to imagine a jury imposing a substantial punitive damages award in light of such a conclusion.

Plaintiff correctly notes that merely conclusory allegations will not suffice. But Defendant has not merely stated that the amount in controversy is more than $75,000. On the contrary, Defendant proffers a reasonable argument for why the amount in controversy is satisfied. Assuming Plaintiff wins, $9,009.15 in lost wages, together with even minimal awards for emotional distress, attorney's fees, and punitive damages will

more than likely exceed the jurisdictional minimum. The Court finds that Defendant has shown by a preponderance of the evidence that the amount in controversy is met.[5]

**CONCLUSION**

For the foregoing reasons Plaintiff's Motion to Remand (ECF No. 10) is DENIED, and Defendant Legault's Motion to Dismiss (ECF No. 8) is GRANTED. Although generally leave to amend would be "freely given," to do so here would imply that Plaintiff could state a viable defamation claim, and the Court has already concluded he cannot. Moreover, Plaintiff has had multiple opportunities to amend his complaint but has failed to do so, and this Court is thus convinced that amendment would be futile.[6] Therefore no leave to amend will be permitted.

IT IS SO ORDERED.

Dated: February 6, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[5] The Court acknowledges that both parties included in their briefs arguments as to whether a federal question provides an alternative basis for federal jurisdiction. Having concluded, however, that diversity jurisdiction exists, the Court need not address these arguments.

[6] Plaintiff failed to file an amended complaint in response to Defendants' Notice of Removal, which clearly delineated why the defamation claim against Legault as then constituted failed to state any viable cause of action. Nor did Plaintiff file an amended complaint in response to the instant Motion to Dismiss, which put Plaintiff on notice yet again as to the deficiencies of his defamation claim. Given these failures, the Court concludes that Plaintiff is unable to further support his defamation claim through any amendment.

20